Muriel HINSON, Plaintiff-Appellee,

v.

**WAL–MART STORES, INC.,**
Defendant-Appellant.

Supreme Court of Tennessee,
at Nashville.

July 18, 1983.

Richard Thomas Matthews, Columbia, for plaintiff-appellee.

Walter W. Bussart, Lewisburg, for defendant-appellant.

OPINION

BROCK, Justice.

The trial judge awarded benefits to the plaintiff for total and permanent disability resulting from injuries which she received in an accident arising out of and in the course of her employment on July 26, 1980, when she fell from a ladder while attempting to procure some fabric for sale to a customer in the defendant's store. The defendant employer has appealed complaining

that the trial court erred in finding that there was any causal connection between the accident and a rheumatoid arthritic condition which the plaintiff has suffered in her hands since the accident and in finding that the extent of the plaintiff's permanent disability is total.

The plaintiff was employed as salesperson in the fabric department of the defendant department store. A customer desired to purchase some fabric which was stored on a shelf high above the plaintiff's head and out of her reach. She procured a ladder and while attempting to bring the fabric from the shelf down the ladder to her counter the plaintiff lost her balance and fell over backwards striking her hip and both hands on the floor. Her right femur, just below the hip joint, was fractured in the fall and was treated by surgical reduction of the fracture. It appears that her recovery from the fracture of the femur was quite satisfactory but that at the time it reached maximum recovery on March 30, 1981, according to Dr. Daniel, it left a residual permanent partial disability estimated at 20 per cent of the hip, or 16 per cent to the right leg or 8 per cent to the body as a whole.

The plaintiff, however, insists that the injuries and disability sustained by reason of her fall extended beyond the leg injury to her hands. She testified that she began to have pain in her hands for the first time on the second or third day following surgery for her hip and, indeed, Dr. Daniel testified that as of September 2, 1980, the plaintiff complained to him of discomfort in her hand.

It is established by the testimony of three physicians, Dr. Daniel, Dr. Fentress and Dr. Wiesman, that the plaintiff does indeed suffer from rheumatic arthritic disease which was described by one of the doctors as a complex collagen disease. Dr. Daniel testified that he could not relate the rheumatoid arthritis to the plaintiff's fall other than that the fall may have briefly aggravated the arthritic condition but would have no effect on the overall course of the arthritic disease. Dr. Vance Fentress testified, however, that the plaintiff's fall may have had

some causal effect on the rheumatoid arthritis; that it certainly had an aggravating effect; and, that the physical trauma and subsequent emotional duress of the accident had an aggravating influence on the plaintiff's rheumatoid arthritic process—that the accident could have exacerbated the rheumatoid arthritis. Dr. Fentress further testified that the rheumatoid arthritis condition is permanent. Dr. James Wiesman, Jr., testified that the plaintiff's hand problem "could be" related to the accident and that the accident "could have" exacerbated the rheumatoid arthritis.

The plaintiff testified that she had never had pain in her hand before the fall and that she had never had rheumatoid arthritis prior to her fall.

The trial court made the following specific finding:

"From the proof presented the court taken as a whole, and particularly from the medical evidence that the plaintiff's arthritic condition of her hands could have been aggravated and exacerbated by the plaintiff's physical and emotional trauma and anxiety sustained in the accident along with the plaintiff's own testimony which was corroborated by other testifying witnesses that she had had no previous arthritic trouble or symptoms prior to the accident, the court finds that the plaintiff has sustained her allegations by a preponderance of the evidence that there is a sufficient causal connection between the accident and the permanent arthritic condition of her hands to sustain the worker's compensation award to the plaintiff set forth herein."

We conclude that the evidence of the medical experts, hereinabove summarized, supports this finding of the trial court. This Court does not "reweigh the evidence; in fact, even if the evidence preponderates against the findings below, the decision will be upheld so long as any material evidence supports it." *Davis v. Gulf Ins. Group,* Tenn., 546 S.W.2d 583 (1977).

Moreover, it is within the discretion of the trial judge to conclude that the opin-

ion of certain experts should be accepted over that of other experts and that it contains the more probable explanation. *Combustion Engineering, Inc. v. Kennedy,* Tenn., 562 S.W.2d 202 (1978).

Here, the trial judge has concluded that the testimony of Dr. Fentress and Dr. Wiesman is more persuasive than that of Dr. Daniel; this was his prerogative. A trial judge may properly predicate a worker's compensation award on medical testimony to the effect that the given incident "could be" the cause of plaintiff's injury, when he also has before him lay testimony from which it may reasonably be inferred that the incident was in fact the cause of the injury. *P & L Const. Co., Inc. v. Lankford,* Tenn., 559 S.W.2d 793 (1978); *Cortrim Mfg. Co. v. Smith,* Tenn., 570 S.W.2d 854 (1978). Under this rule the testimony of Drs. Fentress and Wiesman when coupled with that of the plaintiff, Mrs. Hinson, supports the finding of the trial court that the plaintiff's rheumatoid arthritic condition is causally related to the fall from the ladder. *See also, Masters v. Industrial Garments Mfg. Co., Inc.,* Tenn., 595 S.W.2d 811 (1980).

We also find material evidence to sustain the finding of the trial court that the plaintiff is permanently and totally disabled by reason of her injury. In considering this issue it must be kept in mind that this Court makes a clear distinction in worker's compensation cases between anatomical impairment as determined by a physician and disability to work which results from such impairment. *Federated Mut. Implement & Hardware Ins. Co. v. Cameron,* 220 Tenn. 636, 422 S.W.2d 427 (1967). In *Cameron* this Court recognized that in determining what may constitute permanent and total disability many pertinent factors should be considered, including the skills, education and training of the employee as well as job opportunities and other factors bearing upon employability. In determining the sufficiency of the evidence to support a finding of disability under the act, once permanency and causation are established by medical testimony, as has been done in the instant case, the extent of such disability may be determined from lay testimony and from other evidence as well as from medical evidence. *Kellwood Co. v. Gibson,* Tenn., 581 S.W.2d 645 (1979). In such cases the trial judge is not bound to accept physicians' opinions of the extent of the employee's disability but is entitled to determine the extent of disability from all of the evidence, both expert and non-expert. *Trane Co. v. Morrison,* Tenn., 566 S.W.2d 849 (1978); *Employers Ins. Co. of Alabama v. Heath,* Tenn., 536 S.W.2d 341 (1976).

In the instant case there is medical evidence that the plaintiff suffers a permanent disability because of the injury to her femur and that the rheumatoid arthritic condition from which she suffers is likewise permanent and disabling at least to her hands. There is no dispute that the disability arising from the leg injury was caused by the industrial accident which the plaintiff sustained and, although the three physicians who testified were not unanimous in their opinion respecting a causal relation between the accident and the arthritic condition, Drs. Fentress and Wiesman have testified that the accident did have or could have had an aggravating or activating effect upon the rheumatoid arthritic process suffered by the plaintiff causing it to become symptomatic and disabling. Moreover, the plaintiff herself has testified that the combined effect of the injuries to her leg and hands is such that she is no longer able to stand for long periods of time without pain, that she has difficulty sitting and is unable to use scissors or to otherwise use her hands as she did prior to the accident and, in sum, that she is unable to perform the duties of her employment. Her only work experience has been that of a sales clerk. The experienced trial judge found from all the testimony and from the "visual observations by the court of the plaintiff, ..." that the plaintiff had sustained a permanent and total disability within the meaning of the Worker's Compensation Act. We conclude that the evidence supports that finding and, accordingly, affirm it.

The decree of the trial court is affirmed and costs incurred upon appeal are taxed against the appellant and surety.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.